UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DIANA R.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:23-cv-0082-MPB-MJD |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) ) ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Claimant Diana R. requests judicial review of the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. See 42 U.S.C. §§ 423(d), 1382. Judge Matthew P. Brookman has designated the undersigned Magistrate Judge to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [Dkt. 19.] For the reasons set forth below, the Magistrate Judge **RECOMMENDS** that the Court **REVERSE** and **REMAND** the decision of the Commissioner.

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

## I. Background

Claimant applied for DIB and SSI in February 2020, alleging an onset of disability as of June 25, 2019, which was later amended to August 8, 2019.  [Dkt. 13-5 at 3, 13; Dkt. 13-2 at 58.]  Claimant's application was denied initially and upon reconsideration, and a hearing was held before Administrative Law Judge Anne Sharrard ("ALJ") on October 6, 2021.  [Dkt. 13-2 at 51.]  On April 19, 2022, ALJ Sharrard issued her determination that Claimant was not disabled.  *Id.* at 32.  The Appeals Council then denied Claimant's request for review on September 7, 2022.  *Id.* at 10.  Claimant timely filed her Complaint on January 13, 2023, seeking judicial review of the ALJ's decision.  [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2]  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments

---

[2] DIB and SSI claims are governed by separate statutes and regulations that are identical in all respects relevant to this case.  For the sake of simplicity, this Entry contains citations to those that apply to DIB.

meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

In reviewing Claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).

An ALJ need not address every piece of evidence but must provide a "logical bridge" between the evidence and her conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether Claimant is disabled. *Id.*

### III. ALJ Decision

The ALJ first determined that Claimant had engaged in substantial gainful activity since the amended alleged onset date of August 8, 2019, which the ALJ found "may represent an unsuccessful work attempt." [Dkt. 13-2 at 35.] At step two, the ALJ found that Claimant had the following severe impairments: "diabetes mellitus type I secondary to pancreatectomy, lumbar spine degenerative disc disease with post-laminectomy syndrome following an anterior interbody fusion and dorsal compression and posterior spinal fusion at L5-S1." *Id*. at 36. At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id*. at 38. The ALJ then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except, the claimant can lift and carry 10 pounds occasionally and small docket files frequently. The claimant can sit six hours and stand and/or walk stand/walk 2 hours. She can sit up to two hours at a time, stand up to one hour at a time, walk up to one hour at a time, and every thirty minutes, she requires a change in position, but even with the changes of position, she can remain on task at least 90%. She can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, stoop, crouch, kneel, crawl, and balance on narrow, slippery, or erratically moving surfaces. She can occasionally push or pull with the right lower extremity. She can have no exposure to hazards, including unprotected heights and exposed moving mechanical parts.

*Id.* at 39.

At step four, the ALJ found that Claimant was not able to perform her past relevant work during the relevant time period. *Id*. at 42. At step five, the ALJ, relying on testimony from a vocational expert ("VE"), determined that Claimant was able to perform work that exist in significant numbers in the national economy, specifically, the job of document preparer. *Id*. at 43. Accordingly, the ALJ concluded Claimant was not disabled. *Id.* at 44.

## IV. Discussion

Claimant raises several issues for review, each of which is addressed, in turn, below.

### A. Subjective Symptoms Evaluation

Claimant testified at the hearing that due to back and leg pain and other symptoms she can stand or walk for "[a]lmost up to an hour with a little bit of lightness, like, hurting. But after that hour, it starts setting in bad." [Dkt. 13-2 at 72.] She further testified that she could sit for "[m]aybe up to two hours" until the pain became intolerable. *Id.* at 73. In addition, she testified that she became diabetic because she had her pancreas surgically removed. Although she has an insulin pump, her blood sugar is not well controlled. She testified that she checks her blood sugar up to twelve times a day and it often runs high—over 400 more than ten times a week—which causes symptoms such as bad headaches, lethargy, burning in her hands and feet from diabetic neuropathy, and blurred vision. *Id.* at 75-76. When she felt those symptoms while she was working, she would

> [h]ave to go off to the restroom, check my blood sugar, and then correct it to try to bring it back down. And within the next hour after it started coming down, because it takes 45 minutes, close to an hour and a half later, I can smell a sweet smell in my nasal cavity, so I'd go check it again, and it'd still be around 400.

*Id.* at 76. Claimant also testified that she suffers from anxiety and that she had had five or six panic attacks in the month prior to the hearing. *Id.* at 80. When asked if she could do a desk job, she testified that she could not, "[b]ecause it's hard for me to even get comfortable, whether I'm standing, sitting. I can only do it for a certain amount of time, and it's hard to put a timeframe on it because I—it just depends on how bad . . . my leg or back starts aching." *Id.* at 86.

The ALJ did not fully credit Claimant's testimony about her symptoms and their effect on her ability to work. Instead, the ALJ found that "the claimant's statements concerning the

5

intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision secondary to pancreatectomy [sic]."[3] *Id.* at 40. The ALJ then summarized the evidence and medical opinions in the record and concluded:

> In summary, while the claimant has medically determinable impairments that could reasonably cause some symptoms and limitations, the above evidence shows that the claimant's testimony regarding the extent of such symptoms and limitations is not fully supported. However, the claimant's complaints have not been completely dismissed, but rather, have been included in the residual functional capacity to the extent that they are consistent with the evidence as a whole. Nevertheless, in considering the criteria enumerated in the Regulations, Rulings, and case law for evaluating the evidence and claimant's complaints, the evidence does not establish an inability to perform the range of work assessed herein. The location, duration, frequency, and intensity of the claimant's alleged symptoms, as well as precipitating and aggravating factors are adequately addressed and accommodated in the above residual functional capacity.

*Id.* at 42. Unfortunately, however, nowhere does the ALJ explain **why** she believes the evidence regarding Claimant's physical impairments is not consistent with Claimant's allegations regarding her symptoms.[4] *See Michael v. Saul*, 2021 WL 1811736, at *8 (N.D. Ind. May 6,

---

[3] The ALJ's decision is replete with scrivener's errors such as this one.

[4] The Commissioner argues that Claimant has waived her arguments regarding this issue because her

> attack on the ALJ's subjective symptom analysis is composed of boilerplate recitations of law that do nothing to undermine the decision (Pl. Br. 30-34). In her four pages of argument, Plaintiff does not identify a single flaw in the ALJ's subjective symptom analysis—she has not identified a factor the ALJ should have considered but did not; she has not pointed to any evidence the ALJ overlooked that would have affected the outcome of the case; and she has not engaged with the objective evidence the ALJ did consider to explain how it mandated a different conclusion.

[Dkt. 17 at 7.] In fact, Claimant expressly argues in her brief that the ALJ fails to provide an explanation for her "conclusory finding other than a summary of the evidence." [Dkt. 15 at 32.] This argument is both sufficient and correct.

6

2021) ("A summary is not analysis, as it does not explain *why* the evidence summarized undermined Plaintiff's statements about [her] symptoms or limitations, or which statements were inconsistent.") (emphasis in original) (citing *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008)).

With regard to Claimant's mental impairments, the ALJ states that "claimant's hearing testimony that she had five to six panic attacks during the month before the hearing, including two the day before, is inconsistent with the medical evidence of record" and that "the scant evidence regarding mental health treatment is not sufficient to establish that the claimant's anxiety, adjustment disorder, or single episode of depression are severe impairments necessitating limitations in the residual functional capacity, as explained above under paragraph 3, above." [Dkt. 13-2 at 42.] This at least provides some explanation for the ALJ's finding with regard to Claimant's mental impairments. In fact, however, as the ALJ notes, in September 2020, Claimant saw her primary care physician complaining of daily panic attacks, for which she was prescribed medication. [Dkt. 13-2 at 41.] At a June 11, 2021, visit, she reported that she had stopped taking that medication in January 2021 and that she was doing well until life circumstances caused her to experience increased stress and anxiety and she began having panic attacks again. She was again prescribed medication. At a June 25, 2021, follow-up visit, Claimant reported that she had had "2-3 panic attacks since [her] last visit 2 weeks ago." [Dkt. 13-9 at 185.] It is not clear how this evidence is inconsistent with Claimant's testimony regarding the frequency of her panic attacks in the month leading up to her hearing.

The ALJ was required to "'provide a logical bridge between the evidence and [her] conclusions.'" *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (quoting *Butler v.*

*Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021)). "[A]s with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). The ALJ simply failed to do so here. Because the ALJ did not explain how the evidence of record supported her conclusion, the ALJ's decision cannot be affirmed. *See Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (remand required because the ALJ failed to "adequately articulate her analysis so that we can follow her reasoning"); *see also Poole v. Kijakazi*, 28 F.4th 792, 795–96 (7th Cir. 2022) ("Here, we can only speculate about what persuaded the ALJ to rule against Poole. The ALJ's decision therefore falls short of *Chenery*'s command to articulate the grounds clearly and rationally for her decision.") (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)).

### B. Internal Inconsistencies in ALJ's Decision

Claimant correctly notes that the ALJ's discussion at step two is internally inconsistent. Specifically, the ALJ states—without explanation—that Claimant has **moderate** limitations with regard to each of the "paragraph B" criteria, [Dkt. 13-2 at 36], and then immediately states that Claimant has **mild** limitations with regard to each of the criteria and provides reasons for so finding, *id.* at 37. The inclusion of the conclusory moderate limitations findings is almost certainly a scrivener's error. This conflict should be corrected on remand.

### C. RFC Determination

In her RFC determination, the ALJ found that Claimant "can sit up to two hours at a time, stand up to one hour at a time, walk up to one hour at a time, and every thirty minutes, she requires a change in position, but even with the changes of position, she can remain on task at

least 90%." [Dkt. 13-2 at 39.] This finding was critical, as the VE testified that no jobs would be available to a person who was off task more than ten percent of the work day. *Id.* at 92. Claimant argues that the ALJ erred by not "not[ing] how long it takes her to alternate position" and therefore not adequately explaining how she determined that Claimant's position changes would not take her off-task more than ten percent of the time. The Undersigned does not find that argument persuasive.

That said, the Undersigned agrees with Claimant that the ALJ erred by failing to account in the RFC for Claimant's diabetes-related symptoms and her need to check her blood sugar levels and adjust her insulin as necessary during the work day or explain why such accounting was unnecessary.[5] On remand, the ALJ shall address this issue. If the ALJ determines that Claimant's diabetes-related symptoms and treatment would render her off-task for part of the work day, then obviously the ALJ must consider the combined effect of this in addition to Claimant's need to change positions in determining what percentage of the workday Claimant would be off-task.

---

[5] The Commissioner argues that this argument "is based almost entirely on [Claimant's] subjective complaints and is unsupported by the medical records." [Dkt. 17 at 6.] Perhaps the ALJ would agree with that assessment, but the ALJ made no such finding in her decision, and the Commissioner cannot "defend the agency's decision on grounds that the agency itself did not embrace." *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) (citing *Chenery Corp.*, 318 U.S. at 87 ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.") (additional citations omitted)).

## V. Conclusion

For the reasons stated above, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED** and **REMANDED for further proceedings consistent with this Report and Recommendation**.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

SO ORDERED.

Dated: 17 NOV 2023

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.